(626 P.2d 1223)

No. 52,100

JOE KRAUZER, *Claimant-Appellee,* v. FARMLAND INDUSTRIES, INC., *Respondent-Appellant,* and EMPLOYERS INSURANCE OF WAUSAU, *Insurance Carrier-Appellant,* and WORKERS' COMPENSATION FUND, *Appellee.*

Opinion filed April 24, 1981.

*Stephen J. Jones,* of Wichita, for appellants.

*Timothy P. O'Sullivan,* of Hutchinson, for appellee Workers' Compensation Fund.

Before JUSTICE HOLMES, presiding, MEYER, J., and HARRY G. MILLER, District Judge Retired, assigned.

HOLMES, J.: Farmland Industries, Inc. and its workmen's compensation insurance carrier, Employers Insurance of Wausau, appeal an award of compensation wherein the district court adopted the findings of the examiner and assessed full liability against the appellants and reversed the director's award which had assessed the workmen's compensation fund (the Fund) with a proportionate share of the liability. The original claimant, Joe Krauzer, is not a party to this appeal and the only dispute is

between the appellants and the Fund as to who is responsible for payment of Krauzer's award.

The issue to be determined by this court is whether the district court was correct when it determined that Krauzer did not knowingly misrepresent his physical condition to Farmland when he sought employment and reemployment with that company.

The facts are not in dispute and will not be set forth at length. Krauzer, an air force veteran, was employed by Farmland in August, 1974. On July 1, 1977, he fell and injured his back while at work. The parties agree the resulting disability was compensable under the workmen's compensation act and the amount of the award is not in contention. Krauzer had a long history of arthritis which was substantiated by records from the air force and the Hutchinson Clinic. His air force records revealed an arthritic condition of the lower back which had existed for over ten years prior to May, 1966. The records indicated recurrent episodes of low back pain due to arthritic and degenerative changes in the area of the lumbar spine. Mr. Krauzer was discharged from the armed forces in 1966 and records from the Hutchinson Clinic reveal that he had been treated there for low back pain as early as June, 1971.

At the time of his initial employment by Farmland, Mr. Krauzer was required to fill out a medical history form and undergo a physical examination. The form completed by Mr. Krauzer asked whether he had ever had forty-four different ailments or conditions, including arthritis or a back injury. Mr. Krauzer answered the questions as to arthritis and a back injury in the negative. Mr. Krauzer was examined at the same time for Farmland by the Hutchinson Clinic and the doctor's report indicated no history of back or spine problems and stated Mr. Krauzer had no disqualifying medical conditions and he was fully approved for employment. During his period of employment, Mr. Krauzer was temporarily laid off on two occasions. Upon his return to employment in September, 1975, and May, 1976, he again was required to complete the same medical history forms and undergo a physical examination. The forms were completed in the same manner as before and the physical examination results were the same. The personnel officer of Farmland testified that if Farmland had known of Mr. Krauzer's arthritic condition, he would not have been hired in the first place.

K.S.A. 1977 Supp. 44-567, in effect at the time of Mr. Krauzer's injury provided, in pertinent part:

"(*b*) Knowledge of the workman's preexisting impairment or handicap at the time the employer employs or retains the workman in his or her employment shall be presumed conclusively if the workman, in connection with an application for employment or an employment medical examination or otherwise in connection with obtaining or retaining employment with the employer, knowingly: (1) Misrepresents himself or herself as not having such an impairment or handicap; . . . (5) misrepresents himself or herself as not having any mental, emotional or physical impairment, disability, condition, disease or infirmity; . . . ."

The question before the court is simply did Mr. Krauzer knowingly misrepresent his physical condition to Farmland? If so, the Fund is liable for a proportionate share of his disability award and if not, the appellants are liable for payment of the entire award.

The examiner found that the claimant did not knowingly misrepresent his condition and stated in his decision:

"The Examiner has looked at the employment applications filled out by the claimant as furnished as part of the deposition of Mr. Driver. It is true that in each instance claimant did not mark the box or boxes to show that he had arthritis or back injury. Claimant, to the best of the Examiner's knowledge, has never had a previous back injury as such, suffering only from arthritis in the back. Claimant filled out two or three of these applications and never marked arthritis as something that he had. Throughout claimant's testimony it was apparent that when the attorneys would ask him about back pain he would say that he had not had it, but would state that he had arthritis. Claimant testified that he answered the questions as honestly as he could when he filled out the pre-employment applications. When asked about the problems he had had the last four years he was in the Air Force and the fact that he'd worn a belt to aid him with his arthritic back, the claimant admitted that that was true but apparently did not relate that to a physical handicap or disability. Respondent had the claimant examined by a physician on more than one occasion in connection with his employment, and the physician did not discern any arthritic condition or physical handicap that the claimant had, and in fact, passed him for employment with the respondent. The Examiner does not feel that the testimony sustains the contention of the respondent that the claimant *knowingly* misrepresented himself when he was hired or after he was hired. Accordingly, no portion of any award should be set off against the Kansas Workmen's Compensation Fund."

On review the director reversed the examiner and found knowing misrepresentation by the claimant and apportioned the award between appellants and the Fund. In his findings he stated:

"The claimant, Mr. Krauzer was asked, 'Did you tell them that you had prior back problems when you filled out your medical report?' He answered, 'I don't

recall whether I did or not.' Claimant was asked whether he had any back problems while he was in the Army and he indicated, 'Just arthritis in my back is all.' He also testified he has a belt from the Army that was for the arthritis in his back. Claimant said he tried to honestly answer the questions when he filled out the application form and said that if there was a mistake, it would have been an honest mistake. Claimant was asked whether the respondent was aware of his arthritic pain at the time he was employed and he answered no. He was further asked, 'Do you remember any questions on the employment application regarding prior back problems?' He answered, 'No, sir, I don't. If there was, I overlooked it or something, you know.' Sherl Krauzer, the claimant's wife, was asked whether during the seven years that they had been married, had the claimant ever complained to her about arthritis or pains in the lower back. She noted, 'If he did heavy work, he did.' She further testified, 'Of course, that would cause him to have problems in his back, and it would gradually go away, or - - .' The witness further answered, 'With rest and pain pills, or aspirin, it would ease up, yes.' She further testified that the claimant would return to work after back problems and further noted that after the accident in July, 1977, the pain did not ease and the claimant was in terrific pain. On cross examination by the Fund attorney, Mrs. Krauzer indicated that the claimant would complain about his back following work and this had gone on for about a year prior to his injury.

"The examiner found that the testimony did not sustain the contention of the respondent that the claimant knowingly misrepresented himself when he was hired or after he was hired. The Director has some concern in regard to this finding. It would appear to the Director that the claimant was aware that he had some arthritis and back problems at the time he filled out the employment applications. Relying only on the claimant's testimony on this issue may not give a complete picture. A person who is seeking employment normally wants to put his best foot forward and may not want to be as candid about his prior medical problems [as] he might be otherwise. The Director feels that one must look at all the evidence in a case to determine whether it may be reasonable to conclude that a misrepresentation did occur.

"In the present case the Director is going to enter a finding of a misrepresentation occurring and is a basis for creating a presumption of knowledge on the respondent's part. The Director realizes the statute refers to a 'knowing' misrepresentation, however, the Director still would make this finding. The Director feels that there is evidence that the claimant had some pre-existing back problems and arthritis in his back of which the claimant was aware. The claimant filled out an employment application form three different times in which he indicated he did not have any arthritis or a prior back injury. It might be argued the claimant did not really have any prior back injuries, per se, however, he did have some prior arthritic problems in his back which apparently gave him problems while he was in the army and of which he was aware. In regard to a contribution by the Fund, the Director, based on the testimony of Dr. Jarrott, will find that the Fund should pay 75% of the award and that the respondent should pay 25% of the award."

On appeal the district court reversed the finding of the director and adopted the findings of the examiner. In his memorandum opinion the trial judge stated:

"The examiner found that the claimant had misrepresented his physical condition, but that the misrepresentation had not been knowingly. The director found 'knowing' misrepresentation.

"The evidence is that the claimant is 59 years old with an 8th grade education. In the armed service he had worn an abdominal belt for arthritis in his back. Apparently after doing heavy work the claimant's back would bother him. The claimant himself denies back pain, but admits to arthritis. He further testified that he answered the questions on the form as honestly as he could.

"Although the term 'knowingly' and the related term 'knowing' are used throughout the law, the parties did not cite and the court has been unable to find any Kansas cases defining the term. The Workers' Compensation Act does not define the term. K.S.A. 44-508. The criminal law is of some guidance. Setting aside any concept of criminal intent, the court concludes 'knowingly' means purposefully and intentionally and not accidentally. See generally K.S.A. 21-3201(2).

"The issue then is whether or not claimant's conduct falls within that standard. The burden of proof is upon Farmland and after reviewing the evidence, the court concludes that the misrepresentation was not knowingly made. The claimant's educational background, the lack of severity of his condition and the employment physical form itself all tend to negate the claimant's knowingly misrepresenting himself."

At the outset, this court's scope of review should be considered. The scope of appellate review was recently summarized in *Crabtree v. Beech Aircraft Corp.*, 229 Kan. 440, 442-43, 625 P.2d 453 (1981), as follows:

" 'Under K.S.A. 1979 Supp. 44-556(c), our scope of review is limited to questions of law. The question of whether a district court's judgment is supported by substantial evidence is one of law and if, when viewed in the light most favorable to the party prevailing below, there is substantial evidence to support the district court's factual findings, this Court is bound by those findings and has no power to weigh the evidence or reverse the final order of the court. The term 'substantial evidence' when applied to workers' compensation cases means evidence that possesses something of substance and relevant consequence or evidence that furnishes a substantial basis of fact from which the issues presented can be reasonably resolved. Although this Court may feel the weight of the evidence as a whole is against the findings of fact made by the district court, it may not disturb those findings if they are supported by substantial competent evidence. *Crow v. City of Wichita*, 222 Kan. 322, 332-33, 566 P.2d 1 (1977).' "

In *Hinton v. S.S. Kresge Co.*, 3 Kan. App. 2d 29, 33, 592 P.2d 471 (1978), *rev. denied* 225 Kan. 844 (1979), it was held that a negative finding by a trial court that the party upon whom the burden of proof is cast did not sustain the requisite burden will not be disturbed absent an arbitrary disregard of undisputed evidence.

There can be no doubt from the evidence that Mr. Krauzer misrepresented his physical condition to his prospective employer, Farmland. Was such misrepresentation knowingly made by the claimant? Considering our scope of review, we think not.

Appellants argue, with good reason, that the district court's referral to the criminal definition was error and casts an undue burden of proof upon the employer in a civil case. We agree that the reference to the criminal code and its definitions was improper and incorrect but such reference does not constitute reversible error, per se.

It is appellants' contention that actual misrepresentation because of ignorance or accident should come within the definition of the word "knowingly" and they assert the well established rule that the workmen's compensation act is to be liberally construed to carry out the intent of the legislature to compensate the worker. In support of their position they rely upon *Safeway Stores, Inc. v. Workers' Compensation Fund,* 3 Kan. App. 2d 283, 593 P.2d 1009 (1979), wherein we said in dicta:

"An employer is thus protected under the statute when an employee, through ignorance or fear of not being employed, conceals an impairment or handicap, as long as it discovers the concealment and timely impleads the Fund prior to the first full hearing when any evidence is presented on the claim." p. 287.

*Safeway Stores* was a case quite similar to the one at bar. The claimant filled out an application for employment with Safeway in which he denied having any previous back trouble. He also denied that he had been under the care of a doctor during the previous five years. During the course of his employment claimant slipped and fell, injuring his back. A hearing was held and claimant again denied any previous back injury or condition requiring treatment but testimony of claimant's doctor revealed that he had previously been treated for a congenital defect of the vertebra. The Fund was then impleaded.

The issue in *Safeway Stores* was whether the Fund had been properly impleaded. Although the procedural issue is not relevant to the case at bar, this court's discussion of the rule of statutory construction is. After citing the general rule that the workmen's compensation act should be liberally construed, the court stated:

"The rule of liberal construction of the workers' compensation act is applied in order to award compensation to a worker when it is reasonably possible to do so. The act is directed toward the worker and the standards are geared to the individual. *Chapman v. Wilkenson Co.,* 222 Kan. 722, 567 P.2d 888 (1977). Liberal construction is not afforded an employer against the Fund other than in those instances where a liberal construction would advance the legislative aim of encouraging the employment of handicapped persons." p. 286.

In *Safeway Stores* this court stated that since a decision one way or the other would not affect the worker, the liberal standard of statutory construction urged by Safeway and its insurance company was not applicable.

When the same question is posed in the case at bar, a similar result is reached. The liberal construction that appellants request would make it easier for employers to avoid liability to the disadvantage of the Fund but would not advance the legislative aim of encouraging the employment of handicapped persons. We adhere to our statements in *Safeway* that the rule of liberal construction does not apply under factual circumstances similar to those in this case.

Appellee argues that the definition used by the trial court was simply the clear and unambiguous definition of the term itself. Webster's Unabridged Third New International Dictionary (1967) defines knowingly as "in a knowing manner, with awareness, deliberateness or intention." The Fund contends there simply is no judicial room for defining the term in any other manner. Where language of a statute is plain and unambiguous and conveys a definite meaning, the court has no right to impose another meaning, and the plain and obvious expressions of legislative intent are controlling. *Johnson v. McArthur*, 226 Kan. 128, 596 P.2d 148 (1979).

Appellants' requested liberal definition would have the effect of deleting the word "knowingly" from the statute. The legislature has amended this statute four times since 1974. If it had not intended the word "knowingly" to be included, there has certainly been ample opportunity to delete it. For this court to define "knowingly" as including totally innocent misrepresentations made without intent or awareness would effectively negate the meaning of the word in the statute. In spite of its unfortunate referral to and reliance upon the criminal definition, the trial court did not err as a matter of law in its definition of "knowingly" and its interpretation and application of K.S.A. 1977 Supp. 44-567. It is inherent in the term "knowingly" that some degree of awareness be present. Under the statute a person who misrepresents the condition of his health solely by reason of accident or mistake and without any awareness that he has done so cannot be said to have knowingly made the misrepresentation.

Appellants' second point on appeal is whether under the evi-

dence the trial court properly found that Krauzer did not knowingly misrepresent his prior history of back trouble. In considering the evidence before the trial court, this court must look at the evidence in the light most favorable to the party prevailing below and may not reweigh the evidence. In finding that the claimant had not knowingly misrepresented his back condition, the trial court stated that the claimant's educational background, which was an eighth grade education, the lack of severity of his condition and the employment physicals he was given all tended to negate the argument that he knowingly misrepresented his health. Appellee argues that the trial court's decision is supported by the additional facts that the health history forms were complex and lengthy, that there is no evidence that Krauzer was having arthritis problems at the time these forms were filled out and that Krauzer testified he tried to honestly fill out the employment forms. It is not denied that Krauzer stated in the application form that he had not had any back injury but appellees argue that the question was ambiguous and the answer was not in itself evidence of a knowing misrepresentation. While the same evidence reviewed by a different judge at a different time might have resulted in a different decision, we cannot say there was not substantial evidence to support the trial court's decision. Considering our limited scope of review, the judgment must be affirmed.

The judgment is affirmed.